## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS NESBETH, | Civil Action No. |
| Plaintiff, | (ECF Case) |
| -against- | |
| NEW YORK CITY MANAGEMENT LLC; CITY PROPERTY MANAGEMENT; NEW YORK CITY PROPERTY MANAGEMENT LLC; CITY PROPERTY MANAGEMENT & DEVELOPMENT, INC.; SIMSI ADVISORS, INC.; AIMCO; AIMCO, INC.; AIMCO PROPERTIES; HAMILTON HEIGHTS; HAMILTON HEIGHTS CLUSTERS; HAMILTON HEIGHTS CLUSTER ASSOCIATES, L.P.; HAMILTON HEIGHTS ASSOCIATES LP; THE BESEN GROUP; BESEN GROUP INVESTMENT REALTY; BESEN RETAIL LLC; BESEN & ASSOCIATES INC.; BESEN CAPITAL LLC; BESEN RESIDENTIAL LLC; and Individually and Jointly SANJAY GANDHI, MICHAEL BESEN and NANCY BLACK. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

## NATURE OF THE ACTION

1.      This is an employment case about the above-referenced Defendant employers and their CEO and/or supervisors, including, but not limited to, Defendants Sanjay Gandhi, Michael Besen and Nancy Black, discriminating against, harassing and retaliating against Plaintiff employee, Nicholas Nesbeth, on a regular basis because of the Plaintiff's disabilities, requests for accommodations, medical leave(s), and legally protected complaints. Defendants' unlawful abuse included, but was not limited to, not accommodating Plaintiff's disabilities/impairments;

not permitting Plaintiff to have requested time off from work for medical reasons; terminating Plaintiff's employment; and not curing dangerous defects in Plaintiff's residence, which caused severe injury to Plaintiff's wife. Defendants also did not pay Plaintiff his earned overtime compensation and retaliated against Plaintiff's legally protected complaints regarding the same.

2.     Plaintiff's claims include, but are not limited to, harassment, discrimination, hostile work environment, and retaliation in violation of the Rehabilitation Act, 29 U.S.C.A. § 791, *et seq.*, as amended ("Rehabilitation Act"); the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (NYCHRL"). Plaintiff's claims also include failure to pay earned overtime and unlawful retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and in violation of the New York Labor Laws ("NYLL") Art. 19 §§ 650 *et seq.*. Plaintiff's claims further include unlawful interference with the exercise of Plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); discrimination against Plaintiff for exercising Plaintiff's FMLA rights; and retaliation for exercising Plaintiff's FMLA rights in violation of the FMLA.

3.     These claims are charged against Plaintiff's former employers New York City Management LLC; City Property Management; New York City Property Management LLC; City Property Management & Development, Inc. (collectively, "NYC Management"); Simsi Advisors, Inc.; Aimco; Aimco Properties; Aimco, Inc. (collectively, "Aimco"); Hamilton Heights; Hamilton Heights Clusters; Hamilton Heights Cluster Associates, L.P.; Hamilton Heights Associates LP (collectively, "Hamilton Heights"); The Besen Group; Besen Group Investment Realty; Besen Retail LLC; Besen & Associates Inc.; Besen Capital LLC; and Besen

Residential LLC (collectively, "Besen") (collectively, "Defendant Companies); and against

Plaintiff's former supervisors Sanjay Gandhi (hereinafter, "Defendant Gandhi"), Michael Besen

(hereinafter, "Defendant Besen") and Nancy Black (hereinafter, "Defendant Black").

## **PARTIES**

4.      Plaintiff, Nicholas Nesbeth, is a natural person who, at all times relevant to this

action, resided in New York County, New York.

5.      Defendant New York City Management LLC is a limited liability corporation.

6.      Defendant City Property Management is a domestic business entity.

7.      Defendant New York City Property Management LLC is a domestic limited

liability corporation.

8.      Defendant City Property Management & Development, Inc. is a domestic

business entity.

9.      At all times relevant to this lawsuit, Defendants New York City Management

LLC, City Property Management, New York City Property Management LLC were/are d/b/as of

each other.

10.      At all times relevant to this lawsuit, Defendants New York City Management

LLC, City Property Management, New York City Property Management LLC were/are d/b/as

and/or corporate divisions of The Besen Group.

11.      At all times relevant to this lawsuit, Defendant Michael Besen was/is the

President and CEO of The Besen Group.

12.      Defendant The Besen Group is a domestic business entity.

13.      At all times relevant to this lawsuit, Defendant Sanjay Gandhi was/is the

Managing Director and/or was/is a manager/supervisor of The Besen Group.

3

14.     At all times relevant to this lawsuit, Defendant Sanjay Gandhi was/is a manager/supervisor and/or was/is the Managing Director of Defendants NYC Management; Aimco; Hamilton Heights; and/or Besen.

15.     Defendant Simsi Advisors, Inc. is a domestic business entity.

16.     At all times relevant to this lawsuit, Defendant Gandhi was listed on the New York Department of State, Division of Corporations website as the Managing Director of Simsi Advisors, Inc..

17.     Defendant Aimco is a domestic business entity.

18.     Defendant Aimco Properties is a domestic business entity.

19.     Defendant Aimco, Inc. is a domestic corporation.

20.     At all times relevant to this lawsuit, Defendants Aimco; Aimco Properties; and Aimco, Inc. were/are d/b/as of each other.

21.     At all times relevant to this lawsuit, Defendants Aimco; Aimco Properties; and Aimco, Inc. were/are d/b/as and/or corporate divisions of The Besen Group.

22.     Defendant Hamilton Heights is a domestic business entity.

23.     Defendant Hamilton Heights Clusters is a domestic business entity.

24.     Defendant Hamilton Heights Cluster Associates, L.P. is a domestic limited partnership.

25.     Defendant Hamilton Heights Associates LP is a domestic limited partnership.

26.     At all times relevant to this lawsuit, Defendants Hamilton Heights; Hamilton Heights Clusters; Hamilton Heights Cluster Associates, L.P.; and Hamilton Heights Associates LP were/are d/b/as of each other.

27.     At all times relevant to this lawsuit, Defendants Hamilton Heights; Hamilton Heights Clusters; Hamilton Heights Cluster Associates, L.P.; and Hamilton Heights Associates LP were/are d/b/as and/or corporate divisions of The Besen Group.

28.     Defendant Besen Group Investment Realty is a domestic business entity.

29.     Defendant Besen Retail LLC is a domestic limited liability corporation.

30.     Defendant Besen & Associates Inc. is a domestic corporation.

31.     Defendant Besen Capital LLC is a domestic limited liability corporation.

32.     Defendant Besen Residential LLC is a domestic limited liability corporation.

33.     At all times relevant to this lawsuit, Besen Group Investment Realty; Besen Retail LLC; Besen & Associates Inc.; Besen Capital LLC; and Besen Residential LLC were/are d/b/as of each other.

34.     At all times relevant to this lawsuit, Besen Group Investment Realty; Besen Retail LLC; Besen & Associates Inc.; Besen Capital LLC; and Besen Residential LLC were/are d/b/as and/or corporate divisions of The Besen Group.

35.     At all times relevant to this lawsuit, Defendants NYC Management; Aimco; Hamilton Heights; and Besen were/are d/b/as of each other.

36.     At all times relevant to this lawsuit, NYC Management; Aimco; Hamilton Heights; and Besen were/are d/b/as and/or corporate divisions of The Besen Group.

37.     Defendant Besen is a natural person who, at all times relevant to this lawsuit, upon information and belief, resided in New York County, New York.

38.     Defendant Gandhi is a natural person who, at all times relevant to this action, upon information and belief, resided in New York County, New York.

39.     Defendant Black is a natural person who, at all times relevant to this action, upon information and belief, resided in New York County, New York.

40.     At all times relevant to this action, Defendant Companies employed over 75 workers.

41.     At all times relevant to this action, Defendant Companies engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

42.     At all times relevant to this action, upon information and belief, Defendant Companies had total annual gross operating revenues in excess of $500,000.00.

43.     At all times relevant to this action, Defendant Companies received some form of federal funding and/or assistance.

44.     For example, in 2013, Defendant Hamilton Heights received approximately $30,000 in federal funding.

45.     In 2015, Defendant Hamilton Heights received approximately $27,000 in federal funding.

46.     In 2017, Defendant Hamilton Heights Associates, New York location received approximately $1.8 Million in federal funding.

47.     In 2016, Defendant Aimco received approximately $1.6 Million in federal funding.

48.     Plaintiff seeks to hold Defendants liable under various legal doctrines, including without limitation, vicarious liability, strict liability, respondeat superior, aiding and abetting liability and/or other grounds.

## JURISDICTION AND VENUE

49.     This Court has jurisdiction over the federal claims asserted herein in that they arise out of the laws of the United States.  *See* 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

50.     This Court has supplemental jurisdiction over Plaintiff's New York State and New York City law claims pursuant to 28 U.S.C. § 1367.

51.     Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

52.     On or around July 15, 2016, Mr. Nesbeth filed a Complaint of discrimination, harassment and retaliation in the New York Human Rights Division ("NYSHRD") against Defendant New York City Management (hereinafter, "the Charges").

53.     Mr. Nesbeth's Charges were duly filed with the Equal Employment Opportunities Commission ("EEOC").

54.     The NYSHRD told Mr. Nesbeth that they did not typically permit claimants to file charges against more than one respondent.

55.     On or around November, 2016, Mr. Nesbeth voluntarily withdrew the Charges in the NYSHRD.

56.     Mr. Nesbeth withdrew the Charges so that he could file new charges in the EEOC against all of the above referenced Defendant Companies.

57.     In November, 2016, Mr. Nesbeth filed New Charges in the EEOC against all of the above referenced Defendant Companies (hereinafter, the "New Charges").

58.     Plaintiff's New Charges were also dually filed with the NYSHRD.

59.     Upon Plaintiff's request, the EEOC issued a Notice of Right to Sue ("NORTS"), dated August 10, 2017.

60.     Plaintiff filed the herein action within 90 days of Plaintiff's receipt of the NORTS.

61.     Plaintiff satisfied all of the statutory prerequisites to filing this action with this Court.

62.     Plaintiff seeks an award of appropriate relief.


## RELEVANT FACTS

63.     Defendants are real estate agents, managers and apartment building operators.

64.     Defendants Hamilton Heights Clusters hired Mr. Nesbeth on or around August 28, 2010.

65.     Defendants Hamilton Heights Clusters hired Mr. Nesbeth to work as a porter.

66.     Mr. Nesbeth interviewed with Alex Abreu.

67.     At that time (i.e., on or around August, 2010), Alex Abreu was a manager for Hamilton Heights Clusters.

68.     Mr. Nesbeth also interviewed with Yasmin Rosario.

69.     At that time (i.e., on or around August, 2010), Yasmin Rosario was an assistant manager for Hamilton Heights Clusters.

70.     Mr. Abreu told Mr. Nesbeth that he was hired.

71.     Mr. Nesbeth's work duties included, but were not limited to, cleaning the interior and exterior of Defendants' buildings, and garbage disposal.

72.     The buildings the Mr. Nesbeth cleaned included 505 West 142nd Street, Manhattan, NY.

73.     The buildings the Mr. Nesbeth cleaned included 115 Hamilton Place, NYC, NY.

74.     The buildings the Mr. Nesbeth cleaned included 504 142nd Street, NYC, NY.

75.     The buildings the Mr. Nesbeth cleaned included 542 West 140th Street, NYC, NY.

76.     The buildings the Mr. Nesbeth cleaned included 531 West 145th Street, NYC, NY.

77.     Mr. Nesbeth's duties also included reporting tenant issues and assisting Defendants' superintendent.

78.     Mr. Nesbeth's salary was approximately $12/hour.

79.     Upon information and belief, Defendants Hamilton Heights Clusters were involved in legal dispute(s) in or around 2014/2015.

80.     In connection with the legal dispute(s), a Court appointed a receiver to oversee Hamilton Heights Cluster's businesses.

81.     On or around July, 2015, Defendants NYC Management were hired to manage and/or oversee Defendant Hamilton Height's buildings.

82.     On or around July, 2015, Defendants Besen were hired to manage and/or oversee Defendant Hamilton Height's buildings.

83.     On or around July, 2015, Defendants Aimco also managed and/or oversaw Defendant Hamilton Height's buildings.

84.     Mr. Nesbeth maintained his work position after Defendants began managing and overseeing Defendant Hamilton Height's buildings.

9

85.     Mr. Nesbeth's salary was still approximately $12/hour after Defendants began managing and/or overseeing Defendant Hamilton Height's buildings.

86.     Mr. Nesbeth did not supervise Defendants' staff members.

87.     Defendant(s) gave Mr. Nesbeth his work schedules.

88.     Defendant(s) gave Mr. Nesbeth his work assignments.

89.     Defendant(s) supervised Mr. Nesbeth's work performance.

90.     Mr. Nesbeth worked on Defendant(s)' business premises.

91.     Mr. Nesbeth typically worked 7 days each work week.

92.     Mr. Nesbeth typically worked 6am to approximately 6pm, on Tuesdays, Wednesdays and Thursdays each work week.

93.     Mr. Nesbeth typically worked from 6am to approximately 4:30pm, on Mondays and Fridays each work week.

94.     Mr. Nesbeth typically worked from 9am to approximately 12pm on Saturdays each work week.

95.     Mr. Nesbeth typically worked from 5pm to approximately 8pm on Sundays each work week.

96.     Mr. Nesbeth typically worked approximately 63 hours each work week.

97.     Defendants did not pay Mr. Nesbeth time and a half (i.e., overtime) for each hour worked over forty hours in a work week.

98.     On or around July, 2015, Mr. Nesbeth received his first paycheck from Defendants.

99.     Mr. Nesbeth noticed that he was not paid his earned overtime.

100.    Mr. Nesbeth complained to Defendant Black.

101.     At the time (i.e., on or around July, 2015), Defendant Black was a property manager at Defendant New York City Management.

102.     At the time (i.e., on or around July, 2015), Defendant Black directly and/or indirectly supervised Mr. Nesbeth's work performance.

103.     Defendant Black had the direct and/or indirect authority to hire, fire, discipline employees, including Plaintiff, to set employee work schedules, including Plaintiff, and/or to approve employee leaves from work, including Plaintiff, during Plaintiff's employment with Defendants.

104.     Defendant Black had at least some direct and/or indirect involvement in hiring, firing, disciplining employees, including Plaintiff, in setting employee work schedules, including Plaintiff's and/or in approving employee leaves from work, including Plaintiff's, during Plaintiff's employment with Defendants.

105.     Defendant Black told Mr. Nesbeth that Defendants would work it out with the Court appointed receiver.

106.     Mr. Nesbeth continued to work approximately 63 hours each work week.

107.     Defendants did not pay Mr. Nesbeth his earned overtime compensation.

108.     Mr. Nesbeth continued to complain to Defendant Black.

109.     Mr. Nesbeth also told Defendant Black that he wanted to speak with Defendant Gandhi.

110.     Defendant Gandhi had the direct and/or indirect authority to hire, fire, discipline employees, including Plaintiff, to set employee work schedules, including Plaintiff, and/or to approve employee leaves from work, including Plaintiff, during Plaintiff's employment with Defendants.

111.    Defendant Gandhi had at least some direct and/or indirect involvement in hiring, firing, disciplining employees, including Plaintiff, in setting employee work schedules, including Plaintiff's and/or in approving employee leaves from work, including Plaintiff's, during Plaintiff's employment with Defendants.

112.    Defendant Black told Mr. Nesbeth that Defendant Gandhi was busy in a meeting.

113.    Defendant Black told Mr. Nesbeth that Defendant Gandhi was busy on the telephone.

114.    Defendant Black told Mr. Nesbeth that Defendant Gandhi was busy traveling overseas.

115.    Defendant Black told Mr. Nesbeth reason(s) why he could not speak with Defendant Gandhi regarding not receiving his earned overtime compensation.

116.    On or around August/September, 2015, Mr. Nesbeth saw Defendant Gandhi on Defendants' work premises.

117.    Mr. Nesbeth complained to Defendant Gandhi that he was not being paid his earned overtime.

118.    Defendant Gandhi said that he would give Mr. Nesbeth a check once it is approved by the Court receiver.

119.    Defendants did not give Mr. Nesbeth his earned overtime pay.

120.    Mr. Nesbeth complained to Defendant Gandhi again.

121.    Defendant Gandhi claimed that Defendants would pay Mr. Nesbeth's earned overtime pay.

122.    Defendants still did not pay Mr. Nesbeth's earned overtime compensation.

123.    To date, Mr. Nesbeth has not received all of his earned overtime compensation.

124.    On or around 2008, Mr. Nesbeth was diagnosed with Keratoconus.

125.    Keratoconus is a progressive eye disease in which the normally round cornea thins and begins to bulge into a cone-like shape resulting in distorted vision.

126.    On or around November 23, 2015, Mr. Nesbeth was working when chemicals went into his eye, causing severe pain and burning.

127.    The incident exacerbated Mr. Nesbeth's Keratoconus.

128.    The incident further resulted in partial blindness in both of Mr. Nesbeth's eyes.

129.    On or around November 25, 2015, Mr. Nesbeth notified Defendant Black of his eye injury.

130.    Mr. Nesbeth also gave Defendant Black medical records.

131.    Mr. Nesbeth requested the accommodation of having another worker assist him, so that he could complete some of his work tasks as effectively as possible.

132.    For example, Mr. Nesbeth requested assistance in emptying the trash.

133.    Mr. Nesbeth requested this assistance because there may be sharp objects in the garbage that he may not be able to see.

134.    Mr. Nesbeth also requested assistance with sweeping the floors.

135.    Mr. Nesbeth requested this assistance because dust from the sweeping would exacerbate his eye injury.

136.    Defendant Black told Mr. Nesbeth that another employee Dion (last name unknown) would assist him in completing the duties.

137.    On or around November 25, 2015 (that same day), Mr. Dion began working with Mr. Nesbeth.

138.    From on or around November, 2015 to January, 2016, Mr. Nesbeth's eyes became increasingly more sensitive.

139.    Mr. Nesbeth appeared to have developed an eye infection.

140.    On or around January, 2016, Mr. Nesbeth's eye doctor gave him eye drops to heal the infection.

141.    Mr. Nesbeth's eye doctor also advised that Mr. Nesbeth take approximately 15 days off from work to permit the eye drops to fully heal the infection.

142.    On or around that same day, Mr. Nesbeth notified Defendant Black of his doctor's recommendation.

143.    Mr. Nesbeth also gave Defendant Black a doctor's note.

144.    Mr. Nesbeth began an approved medical leave on or around January 20, 2016.

145.    Mr. Nesbeth was scheduled to return to work from his medical leave on or around late February, 2016.

146.    On or around February 2, 2016, a severe snow storm hit the Tri-State area.

147.    Defendants told Mr. Nesbeth to help remove snow from Defendants' work premises.

148.    Mr. Nesbeth was afraid that Defendants would fire him if he did not comply with Defendants' instructions.

149.    Mr. Nesbeth assisted the superintendent of Hamilton Heights Clusters, David Burns, in removing snow from Defendants' work premises.

150.    Shoveling the snow caused Mr. Nesbeth to have severe pain in his back.

151.    On that same day, Mr. Nesbeth notified Defendant Black of his severe back pain.

152.    On or around late February, 2016, Mr. Nesbeth notified Defendant Black that his doctor cleared him to return to work.

153.    Defendant Black said that she needed to speak with her manager, Defendant Gandhi.

154.    At the time (i.e., on or around February, 2016), Defendant Gandhi directly and/or indirectly supervised Mr. Nesbeth's work performance.

155.    At the time (i.e., on or around February, 2016), Defendant Gandhi had the direct and/or indirect authority to supervise Mr. Nesbeth's work performance.

156.    Defendant Black said that she needed to receive Defendant Gandhi's approval before Mr. Nesbeth could return to work.

157.    In reality, on or around February 2, 2016, Defendants hired a new porter to perform Mr. Nesbeth's work duties.

158.    Defendant Black also notified Mr. Nesbeth approximately the next day that Defendants New York City Management and Hamilton Heights Clusters were speaking with a Court appointed receiver of Hamilton Heights Clusters.

159.    On or around early/mid-February, 2016, Mr. Nesbeth received a check for approximately $700 (hereinafter, the "$700 check").

160.    The $700 check was for Mr. Nesbeth's earned sick pay.

161.    Defendant Black told Mr. Nesbeth to return the check he received.

162.    Defendant Black said that Defendants claimed Mr. Nesbeth was an independent contractor, rather than an employee.

163.    Mr. Nesbeth had already deposited his check, so he could not return it.

164. Mr. Nesbeth also complained that he was an employee, not an independent contractor.

165. Mr. Nesbeth complained that the $700 payment was lawfully his for earned sick pay.

166. On or around late February, 2016, Mr. Nesbeth further complained to Defendant Black that Defendants were discriminating against him because of his disability and medical leave(s).

167. Defendant Black responded by claiming that Mr. Nesbeth had stolen his $700 sick pay check.

168. In reality, Defendants had voluntarily given the check to Mr. Nesbeth.

169. In reality, Mr. Nesbeth had not stolen the $700 check.

170. On or around late February, 2016, Mr. Nesbeth also complained to Defendant Black again about Defendants misclassifying him as an independent contractor when they knew that he was an employee.

171. From February, 2016 onward, Mr. Nesbeth complained to Defendant Black on several occasions regarding Defendants' discrimination, harassment, retaliation and misclassification.

172. Mr. Nesbeth also continued to call Defendants to see when he could return to work.

173. Defendants told Mr. Nesbeth that they needed to speak with the Court receiver.

174. Defendants told Mr. Nesbeth that the Court receiver was out of town.

175. Defendants continued to make excuses for not permitting Mr. Nesbeth to return to work.

176.     On or around May, 2016, Mr. Nesbeth complained to Defendant Gandhi that Defendants were discriminating and retaliating against him.

177.     Mr. Nesbeth also complained about Defendants misclassifying him as an independent contractor.

178.     Defendant Gandhi told Mr. Nesbeth that he was out of town.

179.     Defendant Gandhi also told Mr. Nesbeth that he had to speak with the Court receiver.

180.     Mr. Nesbeth continued to complain to Defendant Gandhi.

181.     Defendant Gandhi kept giving Mr. Nesbeth the runaround.

182.     On or around June 20, 2016, Mr. Nesbeth further complained to Defendant Besen that Defendants were not permitting Mr. Nesbeth to return to work after his medical leave.

183.     Mr. Nesbeth further notified Defendant Besen that he had complained to Defendant Black and to Defendant Gandhi to no avail.

184.     At the time (i.e., on or around June, 2016), Defendant Besen had the direct and/or indirect authority to supervise Mr. Nesbeth's work performance.

185.     Defendant Besen had the direct and/or indirect authority to hire, fire, discipline employees, including Plaintiff, to set employee work schedules, including Plaintiff, and/or to approve employee leaves from work, including Plaintiff, during Plaintiff's employment with Defendants.

186.     Defendant Besen had at least some direct and/or indirect involvement in hiring, firing, disciplining employees, including Plaintiff, in setting employee work schedules, including Plaintiff's and/or in approving employee leaves from work, including Plaintiff's, during Plaintiff's employment with Defendants.

187.    To date, Defendants still have not approved Mr. Nesbeth to return to work.

188.    Mr. Nesbeth lived in one of Defendants' residential housing developments since March, 2013.

189.    Mr. Nesbeth lives there with his wife and children.

190.    Since Mr. Nesbeth filed the Charges with the NYSHRD and filed the New Charges in the EEOC, in November, 2016, Defendants did not cure dangerous defects in Mr. Nesbeth's residence.

191.    For example, these defects include nails protruding from the floor.

192.    These defects include weak and sinking areas of the floor.

193.    These defects include weak and sinking areas of the sub-floor.

194.     These defects include a broken toilet.

195.    These defects include a leaking toilet.

196.    These defects include leaks in the ceilings throughout Mr. Nesbeth's residence.

197.    At least one of the Defendant(s) were notified of the nails protruding from the floor.

198.    Defendant(s) did not cure the protruding nails within 30 days after they were notified.

199.    At least one of the Defendant(s) were notified of the weak and sinking areas of the floor.

200.    Defendant(s) did not cure the weak and sinking areas of the floor within 30 days after they were notified.

201.    At least one of the Defendant(s) were notified of weak and sinking areas of the sub-floor.

202.    Defendant(s) did not cure the weak and sinking areas of the sub-floor within 30 days after they were notified.

203.    At least one of the Defendant(s) were notified of the broken toilet.

204.    Defendant(s) did not cure the broken toilet within 30 days after they were notified.

205.    At least one of the Defendant(s) were notified of the leaking toilet.

206.    Defendant(s) did not cure the leaking toilet within 30 days after they were notified.

207.    At least one of the Defendant(s) were notified of the leaks in the ceilings throughout Mr. Nesbeth's residence.

208.    Defendant(s) did not cure the leaks in the ceilings throughout Mr. Nesbeth's residence within 30 days after they were notified.

209.    On or around December 9, 2016, Mr. Nesbeth's wife was rushed to a Medical Urgent Care facility.

210.    Mr. Nesbeth's wife was rushed to Urgent Care because one of the nails protruding from their apartment floor tore her foot.

211.    Mr. Nesbeth's wife received stitches, a tetanus vaccination and antibiotics.

212.    Mr. Nesbeth's wife also potentially has torn ligaments and tendons.

213.    Mr. Nesbeth's wife has to wear a medical boot on her foot.

214.    Mr. Nesbeth's wife receives medical care for her injuries.

215.    Mr. Nesbeth notified at least one of the Defendants of the several dangerous defects in his apartment on several occasions, including complaining to 3-1-1.

216.    Still, Defendants have not cured the defects.

217.    Beginning on or around November, 2016, and continuing to the present day, Defendants stopped accepting Mr. Nesbeth's rent payments.

218.    Mr. Nesbeth and his wife mail their payments to Defendant(s) as they have done since they first moved into their residence.

219.    Defendant(s), however, have not cashed Mr. Nesbeth's rent checks.

220.    On or around Monday, January 30, 2017, Mr. Nesbeth and his family received an eviction notice from Defendant(s).

221.    The eviction notice alleged that Mr. Nesbeth had not paid his rent.

222.    In reality, Mr. Nesbeth had paid his rent.

223.    Mr. Nesbeth's wife went to housing Court on February 1, 2017, to contest the eviction.

## AS FOR THE FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE REHABILITATION ACT

224.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

225.    This Count is brought under the Rehabilitation Act, 29 U.S.C.A. § 791, et seq., as amended in 1992 (the "Rehabilitation Act"), including §§ 794 and 504, and reference is made to the Rehabilitation Act in its entirety.

226.    Defendant companies are qualified employers within the meaning of the Rehabilitation Act that receive some federal assistance.

227.    Defendant Gandhi is a qualified employer within the meaning of the Rehabilitation Act that receive some federal assistance.

228.    At all relevant to this lawsuit, Defendant Gandhi had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the Rehabilitation Act.

229.    Defendant Besen is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance.

230.    At all relevant to this lawsuit, Defendant Besen had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the Rehabilitation Act.

231.    Defendant Black is a qualified employer within the meaning of the Rehabilitation Act that receives some federal assistance and provides health care services.

232.    At all relevant to this lawsuit, Defendant Black had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages under the Rehabilitation Act.

233.    Defendants discriminated against Plaintiff on the basis of disability with misconduct, including, but not limited to, not reasonably accommodating Plaintiff's disabilities; replacing Plaintiff with a non-disabled employee during Plaintiff's medical leave; terminating Plaintiff's employment; not curing dangerous conditions in Plaintiff's residence in retaliation against Plaintiff's legally protected complaints.

234. Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

235. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, compensatory damages and attorneys' fees from Defendants under the Rehabilitation Act.

## AS FOR THE SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER THE REHABILITATION ACT

236. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

237. This Count is brought under the Rehabilitation Act, 29 U.S.C.A. § 791, et seq., as amended in 1992 (the "Rehabilitation Act"), including §§ 793 [retaliation], 794 and 504, and reference is made to the Rehabilitation Act in its entirety.

238. Defendants' misconduct violated the Rehabilitation Act.

239. Plaintiff complained about Defendants' misconduct.

240. In response to Plaintiff's complaints, Defendants retaliated against Plaintiff, including, but not limited to, not reasonably accommodating Plaintiff's disabilities; replacing Plaintiff with a non-disabled employee during Plaintiff's medical leave; terminating Plaintiff's employment; not curing dangerous conditions in Plaintiff's residence in retaliation against Plaintiff's legally protected complaints.

241.     Upon information and belief, each and every Defendant contributed to the discrimination and retaliation, was aware of the discrimination and retaliation, did nothing to resolve the discrimination and retaliation and/or was complicit in the misconduct.

242.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, compensatory damages and attorneys' fees from Defendants under the Rehabilitation Act.

## AS FOR THE THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE ADA

243.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

244.     This claim is authorized and instituted pursuant to the provisions of the American with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), for relief based upon the unlawful employment practices of the above-named Defendants.

245.     Defendant Companies are employers within the meaning of the ADA.

246.     At all relevant times, Plaintiff was disabled, regarded as disabled and/or had a record of a disability within the meaning of the ADA.

247.     Defendants were aware of Plaintiff's disabilities.

248.     Defendants regarded Plaintiff as disabled.

249.     At all relevant times, Plaintiff was able to perform the essential functions of Plaintiff's position with or without an accommodation.

250.     Plaintiff requested reasonable accommodations from Defendants.

251.     Defendants engaged in unlawful employment practices prohibited by the ADA with misconduct including, but not limited to, not reasonably accommodating Plaintiff's

disabilities; replacing Plaintiff with a non-disabled employee during Plaintiff's medical leave; terminating Plaintiff's employment; not curing dangerous conditions in Plaintiff's residence in retaliation against Plaintiff's legally protected complaints.

252.    Each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the unlawful misconduct.

253.    Defendants' discrimination was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

254.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, attorneys' fees and costs, emotional pain, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

255.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

256.    As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

257.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees and compensatory damages from Defendants under the ADA.

**AS FOR THE FORTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE ADA**

258.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

259.    This claim is authorized and instituted pursuant to the provisions of the American with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), for relief based upon the unlawful employment practices of the above-named Defendants.

260.    Defendants engaged in unlawful employment practices prohibited by the ADA.

261.    Plaintiff complained about Defendants' unlawful conduct.

262.    Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, not reasonably accommodating Plaintiff's disabilities; replacing Plaintiff with a non-disabled employee during Plaintiff's medical leave; terminating Plaintiff's employment; not curing dangerous conditions in Plaintiff's residence in retaliation against Plaintiff's legally protected complaints.

263.    Each and every Defendant contributed to the discrimination/retaliation, was aware of the discrimination/retaliation, did nothing to resolve the discrimination/retaliation and/or was complicit in the unlawful misconduct.

264.    Defendants' discrimination/retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

265.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered

future pecuniary losses, attorneys' fees and costs, emotional pain, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

266.   As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

267.   As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

268.   Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees and compensatory damages from Defendants under the ADA.

**AS FOR THE FIFTH CAUSE OF ACTION**
**FOR FMLA INTERFERENCE**

269.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

270.   This Count is brought under the FMLA, 29 U.S.C. § 2601 et seq., including, but not limited to 29 U.S.C. §§ 2612(a), 2614(a) and 2615(a) ("FMLA"), and reference is made to the FMLA in its entirety.

271.   At all relevant times, Defendant Companies were and are employers within the meaning of the FMLA.

272.   At all relevant times herein, Plaintiff was an employee under the FMLA.

273.    At all relevant times herein, Plaintiff was eligible to receive FMLA benefits from Defendants.

274.    At all relevant times herein, Plaintiff was qualified for Plaintiff's position with Defendants.

275.    At all relevant times herein, Plaintiff exercised Plaintiff's rights protected under the FMLA.

276.    Defendants interfered with, restrained and denied Plaintiff rights under the FMLA with behaviors including, but not limited to, not reasonably accommodating Plaintiff's disabilities; replacing Plaintiff with a non-disabled employee during Plaintiff's medical leave; terminating Plaintiff's employment; not curing dangerous conditions in Plaintiff's residence in retaliation against Plaintiff's legally protected complaints.

277.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; and (v) lost pension and retirement earnings.

278.     As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain and emotional suffering, and lasting embarrassment and humiliation.

279.     Plaintiff is entitled to recover monetary damages and other damages and relief, including liquidated damages pursuant to 29 U.S.C. 2617(a)(1)(A)(iii) and compensatory damages from Defendants under the FMLA.

\

## AS FOR THE SIXTH CAUSE OF ACTION
## FOR FMLA DISCRIMINATION

280.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

281.    This Count is brought under the FMLA, 29 U.S.C. § 2601 et seq., including, but not limited to 29 U.S.C. §§ 2612(a), 2614(a) and 2615(a) ("FMLA"), and reference is made to the FMLA in its entirety.

282.    Defendants interfered with, restrained and denied Plaintiff rights under the FMLA with behaviors including, but not limited to, not reasonably accommodating Plaintiff's disabilities; replacing Plaintiff with a non-disabled employee during Plaintiff's medical leave; terminating Plaintiff's employment; not curing dangerous conditions in Plaintiff's residence in retaliation against Plaintiff's legally protected complaints.

283.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; and (v) lost pension and retirement earnings.

284.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain and emotional suffering, and lasting embarrassment and humiliation.

285.    Plaintiff is entitled to recover monetary damages and other damages and relief, including liquidated damages pursuant to 29 U.S.C. 2617(a)(1)(A)(iii) and compensatory damages from Defendants under the FMLA.

## AS FOR THE SEVENTH CAUSE OF ACTION
## FOR FMLA RETALIATION

286.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

287.    This Count is brought under the FMLA, 29 U.S.C. § 2601 et seq., including, but not limited to 29 U.S.C. §§ 2612(a), 2614(a) and 2615(a) ("FMLA"), and reference is made to the FMLA in its entirety.

288.    Defendants' misconduct violated the FMLA.

289.    Plaintiff complained about Defendants' FMLA violation.

290.    Defendants retaliated against Plaintiff for exercising rights under the FMLA and for Plaintiff's complaints with behaviors including, but not limited to, not accommodating Plaintiff's disability/impairment; not permitting Plaintiff to have requested time off from work for medical reasons; and terminating Plaintiff's employment.

291.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; and (v) lost pension and retirement earnings.

292.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain and emotional suffering, and lasting embarrassment and humiliation.

293.    Plaintiff is entitled to recover monetary damages and other damages and relief, including liquidated damages pursuant to 29 U.S.C. 2617(a)(1)(A)(iii) and compensatory damages from Defendants under the FMLA.

**AS AND FOR THE EIGHTH CAUSE OF ACTION**
**FOR FAILURE TO PAY OVERTIME IN VIOLATION OF THE**
**FAIR LABOR STANDARDS ACT**

294.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

295.    This claim is authorized and instituted pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter, the "FLSA"), and specifically under the provisions of 29 U.S.C. § 20729 U.S.C. § 207 (a)(1), to recover from Defendants unpaid overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees.

296.    The provisions of 29 U.S.C. § 20729 U.S.C. § 207 (a)(1) state:

No employer shall employ any of his employees… for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed.

297.    At all relevant times, Defendant Companies were and are "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

298.    At all relevant times, Defendant Companies employed and continue to employ workers, including Plaintiff.

299.    At all relevant times, upon information and belief, Defendant Companies had gross operating revenues in excess of $500,000.00.

30

300.     At all relevant times, Defendant Gandhi was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the FLSA.

301.     At all relevant times, Defendant Besen was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the FLSA.

302.     At all relevant times, Defendant Black was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the FLSA.

303.     Plaintiff worked in excess of forty hours per workweek without lawful overtime compensation.

304.     Despite the hours worked by Plaintiff, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay Plaintiff overtime compensation.

305.     Upon information and belief, Defendants failed to accurately record, report, and/or preserve records of hours worked by Plaintiff, and Defendants also failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages,

hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq..

306.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), entitling Plaintiff to an award of liquidated damages and such other legal and equitable relief as the Court deems just and proper.

307.    Plaintiff further seeks recovery of her attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR THE NINTH CAUSE OF ACTION
## FOR RETALIATION
## UNDER THE FAIR LABOR STANDARDS ACT

308.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

309.    This claim is authorized and instituted pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter, the "FLSA"), and specifically under the provisions of 29 U.S.C. § 20729 U.S.C. § 207 (a)(1), to recover from Defendant Companies unpaid wages, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees.

310.    Defendants engaged in activities that violated the FLSA, including, but not limited to, misclassifying Plaintiff as an independent contractor, rather than as an employee.

311.    Plaintiff complained about Defendants' FLSA violation.

312.    Defendants retaliated against Plaintiff for Plaintiff's legally protected complaints with behaviors including, but not limited to, not accommodating Plaintiff's

disability/impairment; not permitting Plaintiff to have requested time off from work for medical reasons; and terminating Plaintiff's employment.

313.    Upon information and belief, Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff' federally protected rights.

314.    Upon information and belief, Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

315.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), entitling Plaintiff to an award of liquidated damages and such other legal and equitable relief as the Court deems just and proper.

316.    Plaintiff further seeks recovery of her attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS FOR THE TENTH CAUSE OF ACTION
## FOR DISABILITY DISCRIMINATION UNDER THE STATE LAW

317.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

318.    This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

319.    At all times relevant to this lawsuit, Defendant Walgreen was and is an employer within the meaning of the NYSHRL.

320.    At all times relevant to this lawsuit, Defendant Companies were and are employers within the meaning of the NYSHRL.

321.    At all relevant times, Defendant Gandhi was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

322.    At all relevant times, Defendant Besen was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

323.    At all relevant times, Defendant Black was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

324.    At all relevant times, Plaintiff was and is a person and employee within the meaning of the NYSHRL.

325.    At all relevant times, Plaintiff was disabled, regarded as disabled and/or had a record of a disability from within the meaning of the NYSHRL.

326.    At all relevant times, Defendants were aware of Plaintiff's disabilities and accommodation requests.

327.    Defendants regarded Plaintiff as disabled.

328. Defendants engaged in unlawful employment practices prohibited by the NYSHRL with misconduct including, but not limited to, not accommodating Plaintiff's disability/impairment; not permitting Plaintiff to have requested time off from work for medical reasons; and terminating Plaintiff's employment.

329. Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

330. Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

331. Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

332. Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

333. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

334. Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

335.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE ELEVENTH CAUSE OF ACTION
## FOR DISABILITY RETALIATION UNDER THE STATE LAW

336.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

337.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

338.     Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

339.     Plaintiff complained about Defendants' unlawful misconduct.

340.     Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, not accommodating Plaintiff's disability/impairment; not permitting Plaintiff to have requested time off from work for medical reasons; and terminating Plaintiff's employment.

341.     Upon information and belief, each and every Defendant contributed to the discrimination/retaliation, was aware of the discrimination/retaliation, did nothing to resolve the discrimination/retaliation and/or was complicit in the misconduct.

342.     Defendants' unlawful employment practices negatively affected Plaintiff's terms and conditions of employment.

343.     Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability and reasonable accommodation

requests, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

344.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

345.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

346.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

347.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

### AS FOR THE THIRTEENTH CAUSE OF ACTION
### FOR VIOLATIONS OF THE NEW YORK LABOR LAW

348.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

349.    This Count is brought under the New York Labor Law Article 19, §§ 650 et seq., N.Y. Lab Law § 190, et seq. ("NY Lab Law"), and reference is made to the NY Lab Law in its entirety.

350.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

351.    At all relevant times, Plaintiff was a "clerical and other worker" within the meaning of the NY Lab Law.

352.    At all relevant times, Plaintiff was and is an employee within the meaning of the NY Lab Law.

353.    At all relevant times, Defendant Companies were and are employers within the meaning of the NY Lab Law.

354.    At all relevant times, Defendant Gandhi was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NY Lab Law.

355.    At all relevant times, Defendant Besen was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NY Lab Law.

356.    At all relevant times, Defendant Black was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NY Lab Law.

357.    Defendants failed to pay Plaintiff overtime wages to which Plaintiff was entitled under the NY Lab Law.

358.    By each and every Defendant's failure to pay Plaintiff premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

359.    Due to Defendants' violations of the New York Labor Law, Plaintiff is entitled to recover from Defendants Plaintiff's unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS FOR THE FOURTEENTH CAUSE OF ACTION
FOR RETALIATION
<u>UNDER THE NEW YORK LABOR LAW</u>**

360.    Plaintiff hereby repeats and realleges each allegation contained above with the same force and effect as though fully set forth herein.

361.    This Count is brought under the New York Labor Law, N.Y. Lab Law § 190, et seq. ("NY Lab Law"), and reference is made to the NY Lab Law in its entirety.

362.    This Count is brought under the New York Labor Law, N.Y. Lab Law §§ 215, et seq. and 190, et seq. ("NY Lab Law"), including § 215(a)(iii), and reference is made to the NY Lab Law in its entirety.

363.    Section 215 of the NY Lab Law states, in relevant part, that an employer shall not:

discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . (i) because such employee has made a complaint to his or her employer . . . N.Y. Lab. Law § 215(a)(iii).

364.    Defendants' misconduct violated the NY Lab Law.

365.    Plaintiff complained about Defendants' misconduct.

366.    Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, not accommodating Plaintiff's disability/impairment; not permitting Plaintiff to have requested time off from work for medical reasons; terminating Plaintiff's employment; and not curing dangerous defects in Plaintiff's residence, which caused severe injury to Plaintiff's wife.

367.    As Defendants' misconduct was also in willful disregard for the NY Lab Law, Plaintiff is also entitled to an additional amount as liquidated damages equal to one hundred percent (100%) of the total of such underpayments found to be due under the NY Lab Law, including N.Y. Lab Law § 663.

## AS FOR THE FIFTEENTH CAUSE OF ACTION
## FOR DISABILITY DISCRIMINATION UNDER THE CITY LAW

368.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

369.    This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

370.    At all times relevant to this lawsuit, Defendant Companies were and are employers within the meaning of the NYCHRL.

371.    At all relevant times, Defendant Gandhi was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

372.     At all relevant times, Defendant Besen was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

373.     At all relevant times, Defendant Black was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

374.     At all relevant times herein, Plaintiff was and is a person within the meaning of the NYCHRL.

375.     At all relevant times, Plaintiff was and is a person with a disability within the meaning of the NYCHRL.

376.     At all relevant times, Plaintiff requested reasonable accommodations within the meaning of the NYCHRL.

377.     Plaintiff was and is a person within the meaning of the NYCHRL.

378.     Defendants engaged in unlawful employment practices prohibited by the NYCHRL with misconduct including, but not limited to, not accommodating Plaintiff's disability/impairment; not permitting Plaintiff to have requested time off from work for medical reasons; terminating Plaintiff's employment; and not curing dangerous defects in Plaintiff's residence, which caused severe injury to Plaintiff's wife.

379.    Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

380.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

381.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

382.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

383.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

384.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

**AS FOR THE SIXTEENTH CAUSE OF ACTION**
**FOR DISABILITY RETALIATION UNDER THE CITY LAW**

385.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

386.   This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

387.   Defendants engaged in unlawful employment practices prohibited by the NYCHRL.

388.   Plaintiff complained about Defendants' unlawful misconduct.

389.   Defendants retaliated against Plaintiff's legally protected complaints with misconduct including, but not limited to, not accommodating Plaintiff's disability/impairment; not permitting Plaintiff to have requested time off from work for medical reasons; terminating Plaintiff's employment; and not curing dangerous defects in Plaintiff's residence, which caused severe injury to Plaintiff's wife.

390.   Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

391.   Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination/retaliation.

392.   Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

393.   As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other

damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost pension and retirement earnings; and (vi) attorneys ' fees and costs.

394.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, and lasting embarrassment and humiliation.

395.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that the Defendants engaged in unlawful employment practices prohibited by the Rehabilitation Act; the ADA; the FMLA; the FLSA; the New York State Human Rights Law; the New York City Human Rights Law; and the New York Labor Law.

B.  Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed;

C.  Awarding damages to Plaintiff, retroactive to the date of Plaintiff's employment termination, for all lost wages and benefits, past and future, back pay and front pay, and liquidated damages, resulting from Defendants' unlawful discrimination and retaliation, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D.  Awarding Plaintiff compensatory damages for mental and emotional injury, and injury to reputation;

E. Awarding Plaintiff punitive damages under the Rehabilitation Act; the ADA and the NYCHRL;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action under the Rehabilitation Act; the ADA and the NYCHRL;

G. Awarding Plaintiff liquidated damages under the FLSA and NYLL in the maximum amount permissible by statute given Defendants' willful misconduct;

H. Awarding Plaintiff liquidated damages pursuant to the FMLA, 29 U.S.C. 2617(a)(1)(A)(iii);

I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, NY
         November 7, 2017

Respectfully submitted,

LAW OFFICES OF LAURIE E. MORRISON
*Attorney for Plaintiff*

By:

Laurie E. Morrison, Esq.
100 Church Street, 8th Floor
New York, New York 10007
(212) 721-4051 (office)
(646) 651-4821 (fax)
morrison@lemorrisonlaw.com

**TO:**

New York City Management
381 Park Avenue South, 11th Floor
NYC, NY 10016

City Property Management
381 Park Avenue South, 11th Floor

45

NYC, NY 10016

City Property Management & Development, Inc.
<u>Via Secretary of State</u>
100 West 23rd Street, 4th Flr
New York, New York, 10011

New York City Property Management LLC
<u>Via Secretary of State</u>
2228 First Avenue
New York, New York, 10029

Simsi Advisors, Inc.
<u>Via Secretary of State</u>
c/o Sanjay Gandhi
15-83 209th Street, Suite 2
Bayside, New York, 11360

Aimco
135 Hamilton Pl
New York, NY 10031-6826

Aimco Properties
135 Hamilton Pl
New York, NY 10031-6826

Aimco, Inc.
<u>Via Secretary of State</u>
255 Executive Dr., Ste. 411
Plainview, New York, 11803

Hamilton Heights Clusters
135 2nd Avenue, 1st Floor
NYC, NY 10035

Hamilton Heights Cluster Associates, L.P.
<u>Via Secretary of State</u>
1524 Amsterdam Avenue
New York, New York, 10031

Hamilton Heights Associates LP
135 Hamilton Pl
New York, NY 10031-6826

Hamilton HTS Associates

135 Hamilton Pl
New York, NY 10031-6826

Besen Group
381 Park Avenue South, 15th Floor
New York, NY 10016
Tel (212) 689-8488; Fax (212) 689-9518

Besen Group Investment Realty
381 Park Avenue South, 15th Floor
New York, NY 10016
Tel (212) 689-8488; Fax (212) 689-9518

Besen Retail LLC
c/o Michael Besen
381 Park Avenue South Ste 1517
New York, New York, 10016

Besen & Associates Inc.
c/o Michael Besen
381 Park Avenue South Ste 1517
New York, New York, 10016

Besen Capital LLC
c/o Michael Besen
381 Park Avenue South Ste 1517
New York, New York, 10016

Besen Residential LLC
c/o Michael Besen
381 Park Avenue South Ste 1517
New York, New York, 10016

Michael Besen
381 Park Avenue South Ste 1517
New York, New York, 10016

Sanjay Gandhi
15-83 209th Street, Suite 2
Bayside, New York, 11360