

120 BROADWAY, NEW YORK, NY 10271
TEL: 212.980.9600   FAX: 212.980.9291   WWW.KBRLAW.COM

April 9, 2020

LAURA B. JUFFA
DIRECT: 646.367.6716
LJUFFA@KBRLAW.COM

<u>VIA ECF</u>

Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *Nicholas Nesbeth v. NYC Management, et al.*
      S.D.N.Y. Civil Action No. 17-cv-08650(JGK)(SLC)

Dear Judge Cave:

We represent Defendant Hamilton Heights Cluster Associates, L.P. ("HHCA LP") in the above-referenced matter. Pursuant to the Court's March 19, 2020 Order, we write jointly with counsel for all parties to seek the Court's approval of the parties' settlement of Plaintiff Nicholas Nesbeth's ("Plaintiff" or "Mr. Nesbeth") causes of action arising under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA") (collectively "the Wage & Hour Claims") [1] per the United States Court of Appeals for the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 207 (2d Cir. 2015). A copy of the settlement agreement for Plaintiff's Wage & Hour Claims, executed by Plaintiff,[2] is attached as Exhibit "A."

As an initial matter, the Parties appreciate the Court's continued assistance with this resolution, and specifically with concerns regarding the timing of the settlement payments discussed during

---

[1] In this action, Plaintiff also asserted non-wage claims, including, but not limited to, claims of harassment, discrimination, hostile work environment, and retaliation in violation of the Rehabilitation Act, 29 U.S.C.A. § 791, *et seq.*, as amended ("Rehabilitation Act"); the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (NYCHRL"); unlawful interference with the exercise of Plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); discrimination against Plaintiff for exercising Plaintiff's FMLA rights; and retaliation for exercising Plaintiff's FMLA rights in violation of the FMLA (collectively, Plaintiff's "Non-Wage Claims"). This motion, however, relates only to Plaintiff's Wage & Hour claims.

[2] All parties have approved the Agreement and consented to the filing of this motion. However, due to remote working conditions associated with Coronavirus, not all Defendants have executed the Agreement by the time of filing.

NEW YORK       NEW JERSEY       CONNECTICUT       CALIFORNIA

6379253

the April 6, 2020 Settlement Conference. Plaintiff notes that the Court's indication that a decision on this motion for approval of the Settlement Agreement may be rendered by April 10, 2020, is appreciated as the Court's decision will enable Defendants to process the settlement payments by the parties' agreed-to deadlines set forth in the Settlement Agreement.

By way of brief background, Mr. Nesbeth's allegations in this action are more fully set forth in Plaintiff's Second Amended Complaint ("SAC"). (Docket No. 138).[3] As Your Honor is aware, Mr. Nesbeth is a former Porter, who performed maintenance services in several HHCA LP-owned buildings in Harlem. The properties were managed by building management entities. During the course of Mr. Nesbeth's employment, there were three managing agents for the properties, Defendants: (1) Urban Green Management ("Urban Green"); (2) Safeguard Realty Management ("Safeguard"); and (3) New York City Management LLC ("NYC Management"). As set forth in the SAC, Plaintiff seeks, *inter alia*, to recover unpaid overtime wages under the FLSA and NYLL. Plaintiff also seeks to recover penalties for violation of the wage statement and wage notice provisions of the NYLL. The complaint in the First Action was filed in August, 2017. Thus, based upon the statute of limitations for claims asserted pursuant to New York's Labor Law, Plaintiff could potentially recover for unpaid wages dating from August, 2011.

The parties appeared for two Settlement Conferences conducted by Your Honor on January 14, 2020, and February 14, 2020. The parties have agreed to settle the Wage & Hour Claims for $50,000. Under the settlement, Plaintiff is due to receive Thirty-Three Thousand, Two Hundred and Fifty Dollars ($33,250) (See Ex. A ¶4), after costs and a 1/3 contingency fee. (See Ex. A, ¶ 3). This does not include further amounts that Plaintiff will receive for settlement of his non-wage claims. Plaintiff's counsel is due to receive a 1/3 contingency fee of Sixteen Thousand Seven Hundred and Fifty Dollars ($16,750) (Ex. A), which does not include reimbursement for litigation costs.

Plaintiff's Position:

With regard to his wage and hour claims, Plaintiff alleges that he was employed in the subject buildings from in around August 2010 to February 2, 2016. Plaintiff asserts that there is no dispute with respect to the employment period because Defendants Besen and NYC Management admitted to the 2010-2016 period of employment in their Answer filed in the First Action. Mr. Nesbeth further alleges that he was jointly employed by the management company defendants for the periods corresponding to their management of the premises. In sum and substance, Plaintiff alleges that he worked approximately twenty-three (23) hours of overtime for each workweek that he performed services at the properties, and was not compensated for those overtime hours. Plaintiff further alleges that he was not compensated for hours worked at his regular rate. Plaintiff maintains that his hourly rate was $12.00/hour with an overtime rate of $18/hour.

---

[3] Nesbeth filed suit in this Court (Civil Action No. 1:17-cv-06345) against The Besen Group LLC d/b/a NYC Management, HHCPA LP and Alex Abreu (improperly identified in the caption as "Adreu"), alleging wage and hour claims in violation of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL") and Wage Theft Prevention Act ("WTPA"), (referred to hereinafter as "the First Action"). Nesbeth executed and filed a Stipulation of Voluntary Dismissal of the First Action. The Court in the First Action granted the dismissal without prejudice to "pursue claims including, but not limited to, FLSA claims, in this action, Civil Action No.: 17-cv-8650.

Based on these rates and with regard to his overtime rate of pay, Plaintiff calculates his unpaid overtime to be $414.00 ($18/hour x 23 hours) per week for the period August 2011 to February 2, 2016, which is 230 weeks, which totals approximately $95,000. Plaintiff calculates his unpaid wages at his regular rate to be $28,000 bringing his total unpaid wage and overtime calculation to $123,000, not including liquidated damages and attorneys' fees.

Plaintiff asserts that the value of the alleged WTPA violations is $20,000.

Defendants' Position:

While Plaintiff alleges that he was employed at the subject buildings starting in or around August 2010, Defendants HHCA LP and Urban Green dispute that Plaintiff's employment began in 2010, as UGM's first record of Plaintiff receiving a payroll check for worked performed at the properties was in April 2014.[4] While Plaintiff takes issue with the absence of records, there is no legal requirement to retain records from 2010 if Plaintiff was not employed at that time. Accordingly, if litigated, there would be a genuine dispute as whether Plaintiff was employed prior to 2014.

It is Defendants' position that Plaintiff was paid for all hours worked, that Plaintiff did not work overtime, and that any overtime worked did not amount to 23 hours per workweek. In support thereof, Defendants would have introduced testimony of Plaintiff's supervisors. Accordingly, if Defendants' witnesses were believed, Plaintiff would have recovered no overtime compensation, liquidated damages or attorney fees.

If, however, a jury found for Plaintiff, Defendants asserts that his potential damages are far less than those calculated by Plaintiff. Since Plaintiff was paid $923 per pay period, Plaintiff's effective hourly rate would be approximately $11.50/hour, and the overtime rate of pay would $17.25 per hour. Thus, he would have been able to recover $396.75 for each workweek for the period between November 7, 2011 and January 18, 2016. This amounts to 228 weeks, which is approximately $90,459 in alleged overtime wages. If, however, the period were narrowed to April 2014 to January 18, 2016, the number of workweeks is reduced to 93, and the alleged damages would only be $36,897.75.

It is possible that Plaintiff could be awarded liquidated damages in the amount of 100% of the unpaid wages. However, Defendant may also be able to avoid the imposition of liquidated damages if they prove a good-faith affirmative defense. In particular, for the time period beginning in August 2015, all decisions, including employment-related decisions, were controlled by a court-appointed receiver.

Assuming *arguendo* that Plaintiff prevailed on his wage notice and wage statement violations, Defendants believe that he could be entitled to an additional $10,000 maximum ($5,000 each), the

---

[4] Besen and NYC Management note that they did not make any such admission in this case. They further note that any admission to a factual assertion regarding Mr. Nesbeth's employment prior to their appointment as managing agent is impossible and thus was in error. Should the matter have proceeded in the First Action, an amendment to the Answer would have been submitted.

KAUFMAN BORGEEST & RYAN LLP         3

6379253

jurisprudence concerning these claims is unsettled and they are not covered by the FLSA. However, that recovery, if any, could be significantly limited were a jury to believe he did not start working until 2014, did not work any overtime or less than alleged, that a good faith basis precludes an award of liquidated damages and/or that he is not entitled to recover under the WTPA.

In addition, should the matter not resolve and proceed through trial, several of the Defendants are in difficult financial situations that have been further complicated by the economic downturn amidst the COVID-19 pandemic. Thus, Plaintiff may have challenges in enforcing a judgment against Defendant(s), as all businesses are presently faced with an uncertain future.

In sum, it is Defendants' position that Plaintiff could have been awarded between $0 and $190,918.  However, we believe a more likely verdict would have been approximately $36,897.75, plus attorney fees and costs.  Therefore, we feel that the agreed-upon settlement of the Wage & Hour Claims in the amount of $50,000 is fair and reasonable.

Reasonableness of Fees

Judges in this Court have approved legal fees similar to that provided in connection with Plaintiff's Wage & Hour Claims[5]. See *Hidalgo v. Villiford Realty Corporation*, Case Number 18-cv-10017 (Judge Daniels - SDNY, April 22, 2019) (approving a 1/3 contingency fee of about $15,679 under *Cheeks*); *Wyre v. D.J.D. 50 Bowery LLC*, Case Number 18-cv-01798 (Judge Daniels - SDNY, May 22, 2018) (approving a 1/3 contingency fee of about $11,179 under *Cheeks*)*; Kevin Lynch v. Consolidated Edison, Inc.*, Case No. 16-CV-1137, ECF No. 37 (Judge Furman - approving 1/3 fees of $14,826) ("the Court sees no basis to reduce the fee where, as here, there are no opt-in plaintiffs, the case is not a collective action, and the attorney's fee award is based on an agreement between Plaintiff and his attorney."); *Persaud v. Consulate General of Guyana in New York et al*, Case No. 16-cv-01755 (Magistrate-Judge Peck - SDNY) (approving 1/3 fees of $23,080 under *Cheeks*); *Bumagin v. The Mount Sinai Medical Center, Inc.* et al, Case No.16-cv-08783, ECF No. 40, (SDNY – Judge Gorenstein)(1/3 fee of $14,000 under *Cheeks*); *Rivera v. Golden Krust Caribbean Bakery Inc.*, Case No. 16-cv-09219 (Magistrate-Judge Pitman) (1/3 fee of $16,666 under *Cheeks*).

In the circumstances of this case, the settlement is fair and reasonable for the above referenced reasons.  First, Defendants dispute liability and, if a jury believes Defendants, Plaintiff may receive nothing. Second, the amount Plaintiff is due to receive under the settlement is not insignificant in relation to the wages claimed and represents a fair compromise in light of the legal and factual issues. Third, there is a desire by all parties to resolve the case early and avoid the significant financial and non-financial costs/harms of litigation.

Your Honor also assisted the parties in reaching the total settlement amount for both Plaintiff's wage and non-wage claims, further showing that the settlement amounts are reasonable.

---

[5] Noting that a higher fees percentage is available in connection with Plaintiff's Non-Wage Claims.

KAUFMAN BORGEEST & RYAN LLP                4

Therefore, it is respectfully requested that the Court approve the settlement of the Wage & Hour Claims as fair and reasonable under the FLSA and *Cheeks*.

Should the Court approve of the Parties' Agreement, the Parties further request that the Court enter an Order dismissing the First Action filed by Mr. Nesbeth with prejudice. A Proposed Order is annexed hereto as Exhibit "B."

Respectfully submitted,

Kaufman Borgeest & Ryan LLP

*/s/ Laura B. Juffa*

Laura B. Juffa

cc: via ECF
    (All Counsel of Record)